Thompson et al. *v.* Reading Transit Company,
Appellant.

Argued November 11, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*C. H. Ruhl,* for appellant.

*H. W. Lee* of *Stevens & Lee,* and with him *Charles H. Weidner,* for appellee.

OPINION BY LINN, J., January 30, 1931:

There are three appeals from judgments on verdicts (1) for a two year old child, (2) for Nona Thompson, who was driving her husband's car, and (3) for her husband. Any doubt that we may have had about the judgments for the adults, after considering the arguments made on these appeals, has been removed by Schaeffer v. Reading Transit Co., 302 Pa. 220, decided since they were argued here.

Mrs. Thompson, with the child seated beside her, drove southward on the pike from Reading toward Philadelphia, reached the village of Reiffton, where she lived, and left the pike by a right turn on 34th Street, intending to cross defendant's track on her way home. The track is about 25 feet from the pike, and parallel with it from 33d Street to 34th Street, a distance of 900 feet. After making the turn, and when "about six or eight feet from the first rail," she saw defendant's street car (on its own right of

way), approaching about "half a block or 200 feet away;" she did not decide how fast it was approaching, but concluded that she had time to cross the car tracks before a collision would occur. She misjudged conditions, and when the front wheels of her car were "over the track," she saw the street car approaching 60 or 70 feet away. She testified that as she made the turn from the pike to 34th Street, she was going at the rate of 4 or 5 miles an hour. When her front wheels got over the first rail, she realized that she "couldn't get across," and then stopped, and tried to back off, but was struck before she could do so. The street car moved from 100 to 126 feet before it was brought to a stop. The motorman said that his last stop prior to the collision was at 33d Street, and that as plaintiff traveled down the pike parallel to the railway track, he saw her from time to time;—that he saw her make the turn at 34th Street. He testified, also, that he did not stop or slow down because he thought plaintiff would stop; he gave his speed at 20 to 25 miles an hour; a passenger in the car estimated it at "40 to 50 miles." The day was clear. Mrs. Thompson said that she did not look at the street car from the time she saw it about 200 feet away until she again saw it 60 or 70 feet away, because "I had to watch other traffic and I thought I had time to cross;" as to this other traffic she testified: "I was meeting a car and there was a car honking behind me." Defendant's cars stopped at 34th Street to take on or discharge passengers, but on this trip there was no occasion to stop there.

In Schaeffer v. Reading Transit Co. (supra) the facts are thus stated: "Appellee while driving a Ford delivery truck on Lancaster Pike, near Reading, was struck by appellant's car and seriously injured. The highway and trolley line parallel each other, being about two feet apart. Appellee was turning into a

road intersection to his right at the time of the collision. This was a regular stopping place for appellant's cars, a 'car stop' sign being on a pole at appellee's left as he turned across the track. It was a clear day and the view was unobstructed. As appellee approached the intersection in his automobile, he saw the trolley car about 250 feet away, coming towards him at about 35 miles per hour. When he started to turn into the road across the track his car was running from two to five miles an hour, and appellant's car was 150 feet away, traveling fast. It struck him as he got directly on the tracks, carrying his truck 85 feet down the track before stopping. Judgment having been entered for plaintiff, defendant appeals.

"Appellant contends that it was not negligent. It is the duty of a motorman to approach a public crossing on the outskirts of a large city with his car under proper control, especially when such crossing is a regular stopping place for passengers. He should have reduced his speed when he saw that appellee was attempting to cross. Neither of these was done. Appellant's car approached the crossing and continued into it at a high rate of speed and did not stop after the collision until it had carried appellee's truck down the track a distance of 85 feet, tearing up ground on both sides thereof. That the car was running on the company's private right-of-way and not on the public highway, did not lessen the duty of the motorman on approaching a highway crossing. He should have had his car under such control as the circumstances seemed to require: Knobeloch v. Pgh. etc. Ry. Co., 266 Pa. 140, 144; Kuhns v. Conestoga Traction Co., 290 Pa. 303, 307, 308. It seems clear there was evidence from which the jury could find defendant's negligence.

"Appellant further claims appellee was guilty of contributory negligence. The latter's duty was to ap-

proach the intersection with his car under control, to guard against injury from a trolley car approaching at a reasonable speed and under proper control. Appellee was not under any duty to anticipate appellant's negligence: Weiss v. Pittsburgh Ry. Co., 301 Pa. 539 (and cases there cited); Shields v. P. R. T. Co., 261 Pa. 422; Emmelt v. P. R. T. Co., 89 Pa. Superior Ct. 417, 419. The jury might well have concluded there was ample time for appellee to have cleared the track if reasonable care had been exercised by the motorman in approaching the crossing.

"Had appellant used reasonable care in approaching the crossing when he saw appellee turn his truck to cross the track, thus entering the path of the car, he could have slowed down so as to permit him to cross. Appellee arrived at the crossing first; the car was 250 feet away, and he had reason to believe he had time to cross. Appellee's contributory negligence was properly for the jury."

That decision rules these appeals; see also Weschler v. Traction Co., 293 Pa. 472.

The judgments are severally affirmed.