Powell *v.* Pittsburgh Railways Co., Appellant.

Argued April 25, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

D. H. *McConnell* and with him *J. R. McNary,* for appellant.

E. P. *Curran* and with him *I. Elmer Ecker,* for appellee.

OPINION BY CUNNINGHAM, J., October 2, 1933:

At the time of the events hereinafter described, Second Street, running north and south in the Borough of Wilmerding, was unimproved; it intersected Middle Street, an improved east and west street, at right angles; that street is twenty-one feet and three inches wide, and two tracks of the defendant street railway company are laid thereon. Earl Powell, plaintiff below, lived on Second Street, some fifty feet north of Middle. About daybreak on October 23, 1929, he started to his place of employment, driving his Durant coupe south on Second and intending to proceed west on Middle Street. The bed of Second was four or five feet higher than the level of Middle Street and the approach into the latter was down a sharp grade. A trolley car of the defendant company, approaching from the east, struck Powell's automobile in the rear shortly after he had turned to his right into Middle Street and upon the track; the automobile was demolished and Powell sustained personal injuries.

. At the trial of his action in trespass against the defendant railway company, based upon the alleged negligent operation of its car by its employe, counsel for defendant submitted a written point for binding instructions, which the learned trial judge, GARDNER, J., refused; the jury returned a verdict in favor of plaintiff for $1,495; the court below, in banc, refused a new trial and denied defendant's motion for judgment notwithstanding the verdict; and this appeal is by the defendant from the judgment entered on the verdict.

The only question now involved is whether binding instructions should have been given for the defendant, or judgment subsequently entered in its favor, n. o. v. Whether the court below erred may properly be tested by these excerpts from the plaintiff's testimony: "Well, I had my car sitting in a vacant lot in back of the house in which I live, and I pulled my car out to Second Street, heading south, and went down to the intersection of Second and Middle, and I stopped and looked up the street, and there was a street car coming, not less than two hundred feet, and I started out, and I went out—went about a car length, when, bang— that is all I remember ...... Q. And you say you saw a street car not less than two hundred feet away? A. Yes, sir. Q. On what side was the street car? A. On my left side. Q. What direction was the street car going. A. West. Q. You were going south and the street car was going west? A. I was going south on Second until I hit the intersection of Second and Middle. Q. Then you say you stopped at the intersection? A. Yes, sir. Q. In what direction did you turn? A. I turned to my right—west, heading west. Q. How far did you go west before you were struck? A. One car length [along the trolley track]. Q. Did you get straightened out and go a car length? A. Yes, I was straight around when I got hit."

The material portions of his testimony, upon cross-

examination, read: "Q. This happened early in the morning, did it, Mr. Powell? A. Yes, sir. Q. About what time? A. 6:45, 6:40. Q. Was it daylight then? A. Well, it was not quite daylight. Q. Did you have the lights on your car? A. Parking lights. Q. Then you could see to drive easy enough without the use of lights, could you? A. Yes, sir. Q. Middle Street, where the street car was running, does that have two tracks on it or one? A. Two. Q. And is Middle Street level? A. No, sir. Q. Well, how does it run? A. Why, it has a hill coming—going west. Q. Does that slope down or up? A. It slopes down. ...... I stopped on the other side of the sidewalk; before I went on to Middle, I stopped. Q. You stopped before you reached the crossing walk, or the sidewalk? A. Yes, sir. Q. Now, I am asking you how far were you away from it? A. Well, the front end was even with the back side of the sidewalk, facing me. Q. That is, how far from the first rail of the street car track? ...... A. About five feet. Q. The street car that struck you was running on the first set of rails that you came to, was it? A. Yes, sir. ...... Q. Then, when you were about five feet away from the street car tracks you saw this street car coming at your left, did you, down the hill? A. Yes, sir. Q. How far do you think it was away at that time? A. At least two hundred feet. ...... I looked and saw the street car coming not less than two hundred feet away, and then I pulled out, straightened up, and went a car length when I got hit. ...... [The Court] Q. Did you look after the first time you looked? A. I took a second look, and I saw—to my estimation, the way I saw it, it hadn't gone any at all, hardly. ...... [Mr. Mc-Connell] Q. Then you took the second look just about the time the front end of your car went on to the tracks? A. Yes, sir. Q. Where was the street car then? A. Well, it had not moved hardly at all. I

would say that it was around two hundred. Q. Just about the same place it was before? A. Yes, sir, about the same place. Q. Do you know how fast the street car was coming? A. No, sir; I couldn't tell. Q. You didn't notice anything about the speed at the time? A. Not at the time, no sir.''

The questions of the motorman's negligence and plaintiff's contributory negligence were both submitted to the jury. With respect to contributory negligence the trial judge said:

''It is the duty of any person driving an automobile, as he approaches a street crossing, to approach it with the care which a reasonably prudent person would use under those circumstances. When the plaintiff in this case approached this crossing and saw this street car at a distance of not less than two hundred feet, it is for you to say whether or not he observed due care; that is, would a reasonably prudent person, under like circumstances, without having observed the speed at which the street car was approaching, have driven out on that track, or would he not?

''We have to take the standard of what a reasonably prudent person would do under like circumstances. You have the testimony here, and it is for you to find what the circumstances were ...... Under those circumstances would a reasonably prudent person have driven out and attempted to get in ahead of that street car, or would he have waited until the street car had passed? That is a question for you to determine.'' If the question of plaintiff's contributory negligence was for the jury, counsel for defendant do not complain of the manner in which it was submitted; they predicate their appeal squarely upon the proposition that, under the evidence, the trial judge should have declared plaintiff guilty of contributory negligence as a matter of law.

In passing upon this contention, we must view the

evidence in the light most favorable to the plaintiff, (Mountain v. American Window Glass Co., 263 Pa. 181, 184, 106 A. 313) and, when so considered, we are of opinion that the testimony justified the submission of the question of plaintiff's contributory negligence to the jury. The rules of law applicable to the evidence in this case were thus restated by our Supreme Court in Weschler v. Buffalo and L. E. T. Co., 293 Pa. 472, 475, 143 A. 119:

"Before a driver commits his car to the act of crossing [a trolley track] he should consider the distance of the car from the automobile; he may not rest on the assumption that it will stop at the crossing, but must pay attention to its approach; if, after making these observations, it would appear to the ordinarily prudent person that there is an opportunity to cross safely, it is not contributory negligence to attempt to do so. Absolute accuracy of judgment is not necessary. The test is a fairly reasonable one. The driver of a car is not bound to wait at the crossing until the car passes merely because it is seen in the distance, but as distance is one of the controlling factors entering into the determination of what is due care in a given case, we must be careful not to apply too strictly the rules of safety in a judgment thus reached and determine from the circumstances that the operator took a chance."

Stress is laid by counsel for defendant upon the statement of plaintiff that he did not know how fast the trolley car was coming. Of course, the respective rates of speed at which plaintiff was driving and the trolley car approaching were factors entering into the situation. It was not essential that plaintiff, in order to show a case free from contributory negligence, should state accurately the rate of speed at which the trolley car was approaching—an obviously difficult thing to do. As in Thompson et al. v. Reading Trans.

Co., 100 Pa. Superior Ct. 294, the plaintiff here did not decide just how fast the trolley car was coming, but concluded he had time to turn into and proceed along Middle Street with safety. The test must be whether he acted as a reasonably prudent person would act under all the circumstances. If the testimony left that question in doubt, and we think it did, the case was for the jury: Weschler v. Buffalo and L. E. T. Co., supra. Taking into consideration, inter alia, the facts that plaintiff reached the intersection well in advance of the trolley car, and stopped and looked before turning upon the track, a jury might properly be convinced that a reasonably prudent driver would conclude there was ample time for him to proceed upon his way, if reasonable care were exercised by the motorman in approaching the intersection: Schaeffer v. Reading Transit Co., 302 Pa. 220, 223, 153 A. 323.

Our conclusion is that this case was not so clear as to convict the court below of error in refusing to declare plaintiff guilty of contributory negligence as a matter of law.

Judgment affirmed.